UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

---

RAMONA BLASH o/b/o D.A.S.,

        Plaintiff,

  - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM
AND ORDER
13-CV-4089 (JG)

---

A P P E A R A N C E S:

  PARTNERSHIP FOR CHILDREN'S RIGHTS
    271 Madison Avenue, 17th Floor
    New York, NY 10016
  By: Thomas Gray
    *Attorneys for Plaintiff*

  LORETTA E. LYNCH
    United States Attorney
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
  By: Candace Scott Appleton
    *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

  Ramona Blash, on behalf of her daughter D.A.S., seeks review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration's denial of her application for Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. Blash asserts that the Administrative Law Judge ("ALJ") committed various errors in finding D.A.S. not disabled and seeks a remand to the Acting Commissioner of Social Security (the "Commissioner") for further proceedings. The Commissioner requests that I affirm her decision. I heard oral argument on March 14, 2014. For the reasons that follow, the

Commissioner's motion is denied, Blash's motion is granted and the case is remanded to the Commissioner for further proceedings in accordance with this opinion.

BACKGROUND

A. *Procedural History*

D.A.S. was born on May 29, 2007.[1] R. 33. Blash filed an application for SSI on behalf of D.A.S. on September 29, 2010 – when D.A.S. was three years old – alleging a disability onset date of June 30, 2010. R. 159. The application alleged that D.A.S. suffers from asthma, lead poisoning, and behavioral problems. R. 203. The claim was denied, R. 85, and Blash requested a hearing. R. 89-90. A hearing was held before ALJ Margaret A. Donaghy on October 27, 2011, but, after some brief testimony from Blash, was adjourned so that the record could be further developed and to allow Blash to look into obtaining an attorney. R. 82. The hearing resumed on January 12, 2012, and Blash remained unrepresented by counsel. R. 29. The ALJ issued a decision on March 27, 2012, in which she concluded that D.A.S. is not disabled. R. 14-16. Blash requested that the Appeals Council review the ALJ's decision and submitted some additional records. R. 4-5. The Appeals Council denied Blash's request for review, thus rendering the ALJ's adverse finding the Commissioner's final decision. R 1-3. Blash brought this action on July 15, 2013, alleging that D.A.S. is disabled under the regulations because she suffers from disruptive behavioral disorder, asthma, lead poisoning, and speech delay. Compl., ECF No. 1 ¶4.

B. *Regulatory Standards*

A person under the age of 18 is considered disabled and entitled to SSI under the Social Security Act if they have "a medically determinable physical or mental impairment, which

---

[1] These facts are taken from the administrative record (referred to herein as "R."), which includes, *inter alia*, plaintiff's medical records and the transcript of the hearings held before the ALJ.

2

results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(a)(3)(C)(i). The Commissioner's regulations set out a three-step process for determining whether a minor meets this statutory definition of disability. *See* 20 C.F.R. § 416.924.

The first step requires a determination of whether the child is engaging in "substantial gainful activity." *Id.* § 416.924(a). If so, the claimant is not eligible for SSI. *Id.* § 416.924(b). If the claimant is not engaged in substantial gainful activity, at step two the regulations require a determination of whether "the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation." *Jones ex rel. T.J. v. Astrue*, No. 07-CV-4886, 2010 WL 1049283, at *5 (E.D.N.Y. Mar. 17, 2010) (citing 20 C.F.R. § 416.924(c)) *aff'd sub nom. Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011). At the third step, if the child is determined to suffer from at least one severe impairment, the Commissioner determines whether such impairment or impairments meet, medically equal, or functionally equal a presumptively disabling impairment identified in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (a "listed impairment"). *See* 20 C.F.R. § 416.924(d); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003).

Whether a claimant's impairment functionally equals a listed impairment is determined with reference to how the claimant functions in six "domains," which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1); *see also Jones*, 2010 WL 1049283, at *6. These domains include: "(i) [a]cquiring and using information; (ii)[a]ttending and completing tasks; (iii) [i]nteracting and

relating with others; (iv)[m]oving about and manipulating objects; (v)[c]aring for [oneself]; and (vi)[h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If the claimant exhibits "marked" limitations in at least two of these domains or an "extreme" limitation in one or more of the domains, the claimant's impairment is considered functionally equal to a listed impairment. 20 C.F.R. § 416.926a(a); *see also Kittles*, 245 F. Supp. 2d at 489. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme limitation" exists when a claimant's impairment "interferes *very* seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i) (emphasis added).

C. *The ALJ's Decision*

At the first step of the three-step process described above, the ALJ determined that D.A.S. had never engaged in substantial gainful activity. R. 14. At step two, the ALJ found that D.A.S. suffered from the following severe impairments: lead poisoning, asthma, disruptive behavior disorder, and a speech and language delay. R. 14-15. However, at the third step, she determined that none of these impairments, either individually or in combination, meet, medically equal, or functionally equal a listed impairment. R. 15. In support of this finding, the ALJ analyzed D.A.S.'s capabilities in each of the six functional domains and found that D.A.S. has less than a marked limitation in each. R. 17-22. Accordingly, the ALJ concluded that D.A.S. is not disabled under the Social Security Act.

## DISCUSSION

Blash contends that the ALJ committed several errors that necessitate remand for further proceedings. She claims, *inter alia*, that the ALJ failed to sufficiently develop the record,

4

failed to address all of the medical opinion evidence in the record, and erred in her credibility determination regarding Blash's testimony.

A. *Standard of Review*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The first inquiry requires the court to determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Scott v. Astrue*, No. 09-CV-3999, 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) ("Even before reviewing the ALJ's disability determination under the substantial evidence standard, the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record.") (quoting *Echevarria*, 685 F.2d at 755). The second inquiry requires the court to decide if the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also id.* ("Substantial evidence is more than a mere scintilla.") (internal quotation omitted).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, [] to have correctly applied the . . . regulations,"

5

*Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004), or "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). Alternatively, where the record establishes "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose," the court should remand solely for the calculation and payment of benefits. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980).

    B. *The ALJ's Duty to Develop the Record*

        The ALJ who conducts the hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits. *Sims v. Apfel,* 530 U.S. 103, 110-11 (2000); *see also* 42 U.S.C. § 423(d)(5)(B) ("[The Commissioner] shall consider all evidence available in [a claimant's] case record, and shall develop a complete medical history of at least the preceding twelve months . . . ."); 42 C.F.R. § 416.912(d) ("Before [the Commissioner] make[s] a determination that you are not disabled, [she] will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . . [The Commissioner] will make every reasonable effort to help you get medical reports from your own medical sources . . . ."). This duty is heightened when a claimant proceeds *pro se*; in such cases the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cruz,* 912 F.2d 8, 11 (internal quotation omitted); *see also Santos v. Barnhart*, No. 04-CV-2050, 2005 WL 119359, at *5 (E.D.N.Y. Jan. 7, 2005). The heightened duty of the ALJ to develop the record of a *pro se* claimant is especially important if the claimant is a child. *Colon v. Apfel*, 133 F. Supp. 2d 330, 343-44 (S.D.N.Y. 2001); *accord Marquez o/b/o Infante v. Shalala,* 898 F. Supp. 238, 241 (S.D.N.Y. 1995).

6

Here, the ALJ failed to sufficiently develop the record in two important respects. First and more importantly, the ALJ failed to obtain any of D.A.S.'s medical records from Jacobi Medical Center ("Jacobi"). Dr. Molly Nozyce, the Director of Neurodevelopment Services in the Department of Pediatrics at Jacobi, wrote a letter dated December 16, 2011, stating that D.A.S. had been seen "several times" by Jacobi Neurodevelopment Services. R. 695. The letter explains that D.A.S. was first screened in June 2010, and it was determined that she "manifest[ed] a significant language impairment." *Id.* After the screening, D.A.S. was referred to the Early Intervention Program to be provided with services. *Id.* Nozyce states that D.A.S. underwent another developmental screening on the day the letter was written and that she continued "to manifest a significant impairment in language." *Id.* Nozyce's letter specifies that "[D.A.S.] has difficulty understanding verbal directions and [] cannot respond effectively to specific age appropriate questions." *Id.* Nozyce concludes that D.A.S. requires a "complete speech and language evaluation in order to accurately assess her language difficulties." *Id.*

Dr. Abbey Greenberg, the medical expert who testified at the January 12, 2012, hearing, asked Blash whether D.A.S. had undergone a comprehensive language evaluation, to which Blash replied "[y]es" and explained that it had been conducted by "a doctor from Jacobi." R. 54. Greenberg then remarked that she did not know if the report of this evaluation was in the administrative record. *Id.* In fact, there is no report or other evidence regarding a comprehensive language evaluation in the administrative record. In addition, when asked at the January 2012 hearing about D.A.S.'s verbal problems, Blash testified that D.A.S. is treated at Jacobi every couple months for her verbal difficulties and that there are "papers from Jacobi hospital" that explain what the doctors there have found. R. 46. Records of these visits are missing from the administrative record, as are any medical opinions as to whether D.A.S. is

7

disabled from the physicians or other medical personnel that treated D.A.S. at Jacobi.[2] There is no indication that the ALJ made any attempt to fill this clear gap in the record, which is particularly troubling because it is likely that evidence from one or more of D.A.S.'s treating physicians may be missing. *See Soto v. Comm'r of Soc. Sec.*, No. 09-CV-00457, 2010 WL 4365528, at *8-9 (E.D.N.Y. Oct. 1, 2010) (an ALJ's duty to develop gaps in the administrative record is especially important when the missing records relate to a treating physician's opinion); *see also Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999) ("[T]he ALJ was required to develop [the claimant's] complete medical history for at least a twelve-month period if there was reason to believe that the information was necessary to reach a decision.").

In addition, although Blash testified at the October 27, 2011, hearing that D.A.S. continued to receive treatment at North Central Bronx Health Center ("NCBHC"), the administrative record contains medical records from NCBHC only through October 8, 2010. *See* R. 75. At the October 2011 hearing, Blash testified that Dr. Mary Cosgrove from NCBHC was D.A.S.'s treating pediatrician and that she saw D.A.S. regularly. R. 79-80. The ALJ stated at the October 2011 hearing that the need to obtain records from D.A.S.'s treatment at NCBHC in 2011 was one of the reasons that she decided to adjourn the hearing. *See* R. 80 (ALJ: "So what I'm going to do is have the hearing continued so that we can get all of the updated reference that we need from the teachers and then from her pediatrician [Dr. Cosgrove].").

The ALJ did send subpoenas to NCBHC on September 26 and November 7, 2011, requesting records from D.A.S.'s treatment in 2011, R. 129-30; R. 337-38; however, apparently no medical records from this time period were provided. Although subpoenaing these records was a good first step in seeking to develop a complete administrative record, in cases with a *pro se* plaintiff an ALJ has a duty to inform the claimant of missing records and allow the claimant a

---

[2] The only information in the record from Jacobi is Dr. Nozyce's brief letter discussed above.

chance to produce the missing evidence. *See Soto*, 2010 WL 4365528, at *9 (remanding, in part because the ALJ did not explain to the claimant the importance of obtaining an opinion from her treating physician and give the claimant an opportunity to produce such evidence); *see also Cruz v. Sullivan,* 912 F.2d 8, 12 (2d Cir. 1990) (remanding because the ALJ "failed to advise [the *pro se* claimant] that he should obtain a more detailed statement from [his treating physician]"); *Mann v. Chater,* No. 95-CV-2997, 1997 WL 363592 at *5 (S.D.N.Y. June 30, 1997) ("[B]efore denying a *pro se* claimant's application, the ALJ should advise the claimant that he considered his or her case unpersuasive, and suggest that he or she produce additional medical evidence or call his or her treating physician as a witness.") (internal quotation marks and alterations omitted). The ALJ did not inform Blash at the January 2012 hearing that D.A.S.'s records from NCBHC since October 2010 were still missing from the record and then give Blash an opportunity to seek out and provide those records on her own.

In light of these two significant gaps in the record, remand to the Commissioner is necessary and appropriate. *See Moran v. Astrue*, 569 F.3d 108, 114 (2d Cir. 2009) (an ALJ's failure to develop the record adequately is an independent ground for vacating the decision and remanding the case); *Glast v. Astrue*, No. 11-CV-5814, 2013 WL 5532696, at *9 (E.D.N.Y. Sept. 30, 2013) (same). "The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law," *Rodriguez v. Barnhart,* No. 02-CV-5782, 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003), and while the ALJ's decision may ultimately be sustained, it cannot be upheld on the record now before me.

C. *The ALJ's Adverse Credibility Finding*

Blash asserts that the ALJ also failed to properly evaluate the subjective accounts of the intensity, persistence, and limiting effects of D.A.S.'s symptoms.

9

1. *Regulatory Standards*

To decide whether a claimant is disabled, the Commissioner must consider the subjective evidence of pain and disability testified to by the claimant. *See* 20 C.F.R. § 416.929(a). "It is within the discretion of the Secretary to evaluate the credibility of the [claimant's] complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology." *Gernavage v. Shalala,* 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995). A claimant's statements about his or her symptoms cannot alone establish disability; "there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged," *Davis v. Massanari,* No. 00-CV-4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001), although there need not be "direct medical evidence confirming the extent of the pain" or symptoms. *Snell,* 177 F.3d at 135.

To appropriately assess a claimant's subjective assertions of disability, the regulations provide a two-step process. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). At the second step, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)) (alteration added).

Seven factors are used in evaluating a claimant's subjective complaints: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side

effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii); *see also Ligon v. Astrue,* No. 11-CV-0162, 2012 WL 6005771, at *17 (E.D.N.Y. Dec. 3, 2012). If the ALJ decides a claimant's testimony is not credible, the ALJ must set forth the reasons "with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988); *see also Ligon*, 2012 WL 6005771, at *17 (same); S.S.R. 96-7P, 1996 WL 374186, at *4 (July 2, 1996) ("[T]he adjudicator must . . . give specific reasons for the weight given to the individual's statements.").

    2. *Blash's and Salgado's Testimony*

Blash testified on October 27, 2011, that D.A.S. was four years old and had just started pre-school that September. R. 72-73. Blash stated that D.A.S. is "over-energetic" and a "wanderer," that she often bites others and pulls out her hair. *Id.* Blash reported that D.A.S. will fly into a "screaming rage when she does not get her way" and that she "shuts down a lot" and is "really a loner." *Id.*

At the January 2012 hearing, Blash stated that D.A.S. has trouble "putting her words together" and that sometimes Blash and others have trouble understanding D.A.S. when she speaks. R. 45. Blash stated that D.A.S. is not able to ask verbally when she wants something to eat or drink. R. 46. According to Blash, D.A.S. has a short attention span, R. 45, and cannot maintain concentration when playing with a toy or watching television. R. 49. Blash again stated that D.A.S. will sometimes "shut[] down" and that, while her problem behaviors of

11

pulling out her hair and biting have improved, D.A.S. still has a bad temper and often fights with her brother. R. 47. Blash reported that D.A.S. isolates herself from other children, R. 45, stays to herself at school, and has trouble making friends. R. 49-50.

D.A.S.'s father, Ralph Salgado, testified at the January 2011 hearing. R. 30. He stated that D.A.S. has a speech impairment and that while he is able to understand her, she often "trips up on her words" and "doesn't finish the whole conversation." R. 35. He stated that D.A.S. is "definitely" able to ask for things she wants, like food and drink. R. 36. Like Blash, he testified that D.A.S. has a problem with her temper and sometimes will "shut down." R. 37, 39. Salgado stated that D.A.S. can "zone in" and maintain her focus and also that she has friends at school. R. 40. He reported that D.A.S. has no physical problems other than sometimes feeling out of breath. R. 40-41. According to Salgado, D.A.S. is able to dress and feed herself, go to the bathroom on her own, and knows to exercise care around fire and not to run into traffic. R. 41.

3. *The ALJ's Credibility Determination*

At the first step of her credibility analysis, the ALJ determined that D.A.S. suffers from medically determinable impairments that could reasonably be expected to produce the alleged symptoms. However, at the second step she found that "the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with my finding that the claimant does not have an impairment or combination of impairments that functionally equals the listing for the reasons explained below." R. 16. In summarizing Blash's and Salgado's testimony the ALJ noted that their statements were contradictory regarding D.A.S.'s abilities to make friends. *Id.* ("They said that she has friends at school but then they contradicted themselves by claiming that no one wants to play with her at school.").

Blash contends that this credibility determination is deficient because the ALJ only highlighted "one perceived 'inconsistency' in the parents' testimony . . . ." Pl. Br. 31. However, there were other important inconsistencies between Blash's and Salgado's testimony regarding D.A.S.'s functional capabilities that the ALJ did not specifically mention in her opinion. For example, as noted above, Salgado testified that D.A.S. is able to "zone in" and maintain her focus on a given activity, R. 40, whereas Blash stated that D.A.S. is unable to concentrate on playing with a toy or watching television. R. 49. Additionally, Salgado stated that D.A.S. is "definitely" able to ask for things she wants, like food and drink, R. 36, but when asked the same question, Blash testified that D.A.S. is not able to verbally express her needs. R. 46. Furthermore, Blash's and Salgado's testimony regarding D.A.S.'s capabilities conflicted with many of D.A.S.'s teachers' accounts of her functional abilities that the ALJ discussed at length in her opinion. For example, two teaching assistants at D.A.S.'s pre-school – Cynthia Loor and Myriam Lopez – reported that D.A.S. has "no problem" in playing cooperatively with other children; making and keeping friends; expressing anger appropriately; and using language appropriate to the situation and listener. R. 255.

In light of these contradictions and inconsistencies, I conclude that there is substantial evidence supporting the ALJ's adverse credibility determination as to Blash's and Salgado's testimony. *See Brault v. Comm'r of Soc. Sec*., 683 F.3d 443, 448 (2d Cir. 2012) ("If the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.") (internal citations omitted). An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *See id.*; *see also Felix v. Astrue*, No. 11-CV-3696, 2012 WL 3043203, at *9 (E.D.N.Y. July 24, 2012) ("[I]f the

evidence in the record permits a reviewing authority to glean the rationale of an ALJ's decision, the ALJ is not required to mention every item of testimony or to explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") (internal quotation marks omitted). "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." *Aponte v. Sec'y, Dep't Health and Human Servs.*, 728 F. 2d 588, 591 (2d Cir. 1984) (citation omitted). While it may be appropriate to revisit the issue on remand in light of the more fully developed record, on the record before me I see no error in the Commissioner's credibility determination.

## CONCLUSION

For the reasons explained above, Blash's motion for judgment on the pleadings is granted. The Commissioner's motion is denied. The case is remanded to the Commissioner for further development of the record and reconsideration. On remand, the Commissioner should focus specifically, but not exclusively, on developing the record of D.A.S.'s treatment at Jacobi, including obtaining records of any comprehensive speech evaluation that was conducted, and also must inform Blash of any records from D.A.S.'s ongoing treatment at NCBHC that are still missing. The Clerk of the Court is directed to enter judgment consistent with this order and to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 27, 2014
      Brooklyn, New York

14